IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

02 JUL -1  PM 4: 52

| | | |
|---|---|---|
| CODY WHEELER, DON DAVIS, | § | |
| and DAVEY WILLIAMS, | § | |
| Plaintiffs, | § | NO. **502CV136** |
| | § | |
| vs. | § | JURY DEMAND |
| | § | |
| PILGRIM'S PRIDE CORPORATION | § | CLASS ACTION |
| Defendant | § | |
| | § | |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Cody Wheeler, Don Davis and Davey Williams, by and through their attorneys, and file their Original Class Action Complaint against Defendant Pilgrim's Pride Corp. and would respectfully show the Court the following:

### I. NATURE OF ACTION

1.      Plaintiffs bring this class action on behalf of themselves and other growers under the Packers & Stockyards Act (7 U.S.C. § 192), and breach of fiduciary duties. Plaintiffs are individuals who have grown chickens (broilers) under a broiler grower agreement with Pilgrim's. The other Class Members are also individuals who have grown broilers under the same broiler grower agreements with Pilgrim's. Throughout the duration of these contractual relationships, Pilgrim's has engaged in conduct that can be described as manipulative, coercive, fraudulent, overreaching, deceptive and unfair.

2.      Plaintiffs also bring individual causes of action under the Packers & Stockyards Act (7 U.S.C. § 192), common law fraud, negligence, breach of fiduciary duties and breach of contract for the above-described treatment of Plaintiffs.

## II. PARTIES

3.      Plaintiff Cody Wheeler is a citizen of the State of Texas and a resident of this District.

4.      Plaintiff Don Davis is a citizen of the State of Texas and a resident of this District.

5.      Plaintiff Davey Williams is a citizen of the State of Texas and a resident of this District.

6.      Defendant Pilgrim's Pride Corporation is a Delaware corporation with its principal place of business in Pittsburg, Camp County, Texas.  It can be served by serving its registered agent CT Corporation Systems at 350 N. St. Paul Street, Dallas, Texas 75201.

## III. JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 7 U.S.C. §§ 209, 2305. This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367. Venue is proper here since all or a substantial part of the acts giving rise to this action occurred in this District. Venue is also proper as Defendant resides in this District.

2

## IV. VERTICAL INTEGRATION

8.    Pilgrim's is a packer and live poultry dealer under the Packers & Stockyards Act. In 2001, Pilgrim's processed 44 million pounds of chicken per week. Pilgrim's is the 2nd largest poultry company in the United States with annual sales exceeding two billion dollars.

9.    Plaintiffs and Class Members (growers) are/were poultry growers. Growers and Pilgrim's entered into poultry growing arrangements for the grow-out of live poultry, specifically broilers. Pilgrim's has represented to growers that Pilgrim's considered the growers to be partners.

10.    Pilgrim's is a vertically integrated company. It controls the production, processing and distribution of the broilers. Pilgrim's owns and operates the hatcheries, feed mills, processing plants and distribution centers. Pilgrim's owns and supplies the broilers, feed and medicine to the growers. The growers provide the land, buildings, equipment, utilities and labor in growing the birds. In this vertical integration arrangement, the farmers have invested approximately 50% of the capital costs, but have virtually no influence upon the terms of the arrangement or the grow-out of the birds.

11.    To attract potential growers, Pilgrim's represented that it would assist each of them to yield a fair return on their investment. While the contracts are flock to flock, Pilgrim's represented to Plaintiffs and lending institutions that the growing arrangements were long term, 20-25 years. Without such representations, few lending institutions would lend such large sums to the growers. Pilgrim's failed to advise that unreasonable restrictions would be placed

3

on growers greatly decreasing their assets if they attempted to liquidate. Pilgrim's failed to disclose that unreasonable restraints and modifications in the future would be placed on the growers and failure to comply would result in termination of the growing arrangement. Rather, growers were falsely lead to believe that they were/are independent contractors.

12.     Pilgrim's has represented in the past that average production is expected to yield a 15% return. Pilgrim's has provided many growers written materials regarding expected income and expenses knowing the same to be false. Pilgrim's has failed to advise that extensive and, at times, unnecessary capital and maintenance costs would be borne by the grower. In reality, Pilgrim's requires expensive capital upgrades which are at times experimental and of little or no benefit. If the farmer refuses or questions the upgrade, Pilgrim's may not deliver any more chickens or may retaliate against the farmer. What is more, some beneficial equipment desired by growers for management purposes is prohibited.

13.     Growers are paid based on a ranking system. Growers are ranked with other growers whose broilers were processed at the kill plant during the same week.

14.     The growers compete for a predetermined amount of money. Growers are paid using a base pay per pound. Depending upon performance variables, such as grower cost and feed conversion, a grower will be paid more per pound than the base pay or less per pound than the base pay. However, the key variables (inputs) that determine pay to the growers, are entirely under the

4

control of Pilgrim's. What is more, the inputs vary from one grower to another making the system of pay to the growers unfair, deceptive, arbitrary and discriminatory.

15.     Pilgrim's dictates virtually all of the decisions related to growing broilers. Pilgrim's dictates when the birds will be delivered, how many birds will be delivered (density) and the quality of birds delivered. Pilgrim's dictates how birds will be fed and cared for during the grow-out period. Pilgrim's determines in what manner the birds will be accepted at the end of the grow-out period and when the birds will be taken from the farm. For example, growers have recently been required to maintain increased temperature levels in the winter months than from previous years. This increase in temperature comes at great expense to the growers. These dictates range from things as simple as who is allowed on the growers' farms, to complicated matters such as the specifications of houses.

16.     Under the growing arrangement, Pilgrim's is obligated to deliver good quality inputs - chicks (baby broilers), medication, supplies and feed to the growers. Pilgrim's is also obligated to provide technical assistance to maximize the performance of each Plaintiffs' flocks and to ensure measures are in place for broilers to grow at peak efficiency. Pilgrim's is obligated to maximize the contract benefits of growers. Pilgrim's has failed to provide the above. At times, a grower with sub-standard inputs is required to compete against a grower with average or good quality inputs.

17.     Pilgrim's has unilateral control as to the quality of baby chickens that are delivered to the grower. Different quality baby chickens are raised

throughout Pilgrim's hatchery complexes and distributed to the growers. The quality of baby chickens is influenced by a number of factors, including the age of the laying hen, breed type and the specific hatchery where the chicken was hatched. Poor chick quality causes increased mortality, decreased feed conversion and increased condemnation. Thus, the chick quality greatly affects grower pay.

18. Pilgrim's knows of this discrepancy in quality of the baby chickens, yet continues to knowingly cause growers to receive inferior quality baby chickens. Pilgrim's fails to properly cull inferior or sick chicks prior to delivery to growers. On information and belief, because Pilgrim's or its officers have a financial interest in entities ultimately responsible for providing chicks, Pilgrim's has failed to use the best management decisions in selecting inputs.

19. Growers are not provided any information regarding the hatchery location, flock number, age of the hen, breed of hen or any other information that will help the grower to manage his farm and monitor chick quality. There is simply no system to allow the grower to assure he/she receives a quality chick.

20. There are no checks and balances to assure proper chick quality.

21. Pilgrim's has unilateral control as to the type, quality and quantity of feed provided to the broilers. Plaintiffs are required to accept the feed delivered by Pilgrim's, and at times, it is visibly obvious to Plaintiffs that different loads of feed possess different qualities of ingredients. Feed quality and quantity has a great effect on grower pay.

6

22.     Growers at times run out of feed due to Pilgrim's failure to properly deliver feed.

23.     Growers are not provided the feed ingredients.

24.     There are no checks and balances to assure proper feed quality.

25.     Growers are not allowed to have certified scales on their farms even though Pilgrim's has admitted inaccuracies in its scales. Scales are valuable management tools for monitoring pay items.

26.     Growers are not allowed to verify feed delivery weights and, at times, are not provided computer-generated tickets of feed weights.

27.     Growers are not allowed to verify broiler pick-up weights and, at times, are not provided computer-generated tickets of broiler weights.

28.     Plaintiffs are bound by the quantity of feed delivered to their respective farms that is determined solely by Pilgrim's. What is more, feed is often delivered at unusual hours to the growers.

29.     Pilgrim's represented that it would provide technical assistance to maximize the performance of each flock of broilers. Little technical assistance is provided. Rather, the thrust of the technician's purpose is to document the mandates of Pilgrim's. Until recently, the service person would not be present when baby chicks were delivered. Rarely, will immediate and proper action be taken when birds are ill. Rarely, will Pilgrims post birds to determine the cause of illness and death. However, at times, Pilgrim's has delivered medication to growers at the same time the baby chicks are delivered, showing their knowledge of disparate chick quality.

30.     At all times during the growout period, the broilers are the property of Pilgrim's. However, when broilers die during the growout period, the dead broilers become the property of the growers and their disposal is now the growers' problem.  Pilgrim's also leaves paper with litter from chick trays and medicine bags for the grower to burn or discard. Pilgrim's conduct seeks to shift the risk of environmental laws regarding dead bird disposal and litter to the grower. It is believed, however, that Pilgrim's takes the tax credit for the dead birds.

31.     Pilgrim's agents and employees are responsible for picking up marketable birds. Pilgrim's often will not accept broilers damaged or killed in the catching process. When broilers damaged or killed by the chicken catchers are not accepted by Pilgrim's, the grower is left to dispose of these broilers himself as if they had died during the growout period, is not paid for the bird and is charged for the feed consumption. This significantly affects the growers pay because the grower is charged for the feed consumption and loses pounds of live weight.

32.     The growers are not given any credit for decreased weight of the bird for shrink caused by the fault of Pilgrim's. The only exception to this rule is if the broilers are hauled to a plant outside of the growing area of the grower.

33.     The growers are paid based on the live weight of the caught chickens prior to processing. However, each grower is charged for the weight that is condemned by the USDA due to poor chick genetics, poor handling by the catchers or for reasons that cannot be related specifically back to the grower.

8

This condemnation charge has been unfairly allocated to each respective grower, for his own share of weight that has been condemned if condemnation exceeds 1%.

34.    For purposes of this complaint, there are basically two types of chicken houses. One being conventional ventilation, and the other being tunnel ventilation. Pilgrim's now requires all new houses to be built with tunnel ventilation. However, when Plaintiffs and Class Members built their houses, tunnel ventilation was not required. Not only was it not required, it was not an option because Pilgrim's had other "specifications" in place.

35.    Pilgrim's has recently started a program wherein it pays growers a half of a cent ($.005) more per pound for broilers if the grower builds or converts to a tunnel ventilation (cool cell) chicken house. This program has cost other growers lost revenue simply because they do not have the same type "chicken houses" as the growers who are paid more. Yet, Pilgrim's receives no additional compensation from the consumers for broilers grown in a tunnel ventilated house.

36.    Growers who built or purchased broiler houses that met the "specifications" prior to the tunnel "specifications" were given no bonus for having a chicken house that cost more than older houses. For example, when Plaintiff Cody Wheeler built his broiler houses, he paid considerably more than the growers paid from prior years. However, he did not receive any sort of increase in pay to offset his higher capital expenditures. For a grower to now convert a conventional house to tunnel could cost in excess of $30,000.00 per house.

Thus, for a grower with 6 houses the cost could be in excess of $180,000.00.
Even with the increase in pay, it is not economically feasible to make the
conversion.

37.    Vertical integration in the hands of a dominant and powerful entity
can have disastrous consequences. Operation under this arrangement can lead
to demolition of open, transparent and competitive markets. The integrator can
pay growers without any checks and balances for accuracy or truthfulness;
deliver sub-standard inputs; apply undue pressure to farmers; load undesired
risks onto the farmers; and control criticism. Pilgrim's has chosen to exercise
those potential consequences.

38.    The individual farmer lacks the market power to bargain with
Pilgrim's at arm's length. The exploitation of power generated from consolidation
of the industry, combined with vertical integration, is demonstrated by Pilgrim's
conduct against Plaintiffs.

## V. CLASS ALLEGATIONS

39.    Plaintiffs bring this nationwide class action on behalf of themselves
and others similarly situated. The Plaintiffs bring this class action on behalf of
themselves and the following Class: All broiler growers who have grown broilers
for Pilgrim's in the past four years under the ranking system method of pay.
Excluded from this Class is Defendant; any entity or person who has a controlling
interest of Defendant; all officers, directors and employees of Defendant; any
legal representatives, heirs, successors and assignees of the foregoing; and any
person or entity that has any monetary interest in any of Defendant's company-

owned broiler farms. In the alternative, if a nationwide class is not allowed, Plaintiffs seek five separate classes for each state as identified in paragraph 40(a). Plaintiffs reserve the right to expand the class definition as may be appropriate based upon evidence uncovered during the course of discovery.

### Rule 23(a) Prerequisites of the Class

40.     Prosecution of the claims of Plaintiffs and Class Members as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)     There are currently approximately 300-350 broiler growers in each complex. Upon information and belief, there are complexes in Lufkin, TX; Dallas, TX; Mt. Pleasant, TX (2 plants); Nacogdoches, TX; DeQueen, AR; Broadway, VA; Marshfield, NC and Moorefield, WV. Because of the high number of growers in the proposed Class, joinder of all members is impracticable. Joinder is also impracticable because of the geographic diversity of the Class Members, the need to expedite judicial relief and the Plaintiffs' lack of knowledge of the identities or locations of all members of this Class.

(b)     There are numerous questions of law and fact arising from Pilgrim's conduct which are not only common to, but are identical to members of Class. This includes but is not limited the following: (1) whether Pilgrim's has violated the Packers & Stockyards Act and breached its fiduciary duties to growers in the past by charging Plaintiffs and Class Members for condemned poultry by the USDA; and (2) whether the ranking system upon which Plaintiffs

and Class Members are paid violates the Packers & Stockyards Act and violates Defendant's fiduciary duties owed to Plaintiffs and Class Members.

(c)    The claims of Plaintiffs are typical of the claims of the members of the Class as all claims arise out of the same course of conduct perpetuated by Pilgrim's throughout each growers' contractual relationship with Pilgrim's. The Plaintiffs and the members of the Class have been, and continue to be unfairly and identically harmed by the same deceptive, unlawful, unfair, capricious, arbitrary and discriminatory conduct.

(d)    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. There are no conflicts between the claims of the Plaintiffs and members of the Class. Counsel for Plaintiffs will vigorously assert Plaintiffs' claims and those of the members of the Class.

## Rule 23(b)(2) Prerequisites of the Class

41.    The prosecution of the claims of Plaintiffs and Class Members as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate because Pilgrim's has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## Rule 23(b)(3) Prerequisites of the Class

42.    In addition, the prosecution of the claims of Plaintiffs and Class Members as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)     The questions of law and fact common to Plaintiffs and the Class Members predominate over any questions affecting only its individual members; and

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy.

43.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications with respect to individual members that could impede or impair others' rights to protect their interests. By contrast, prosecution of this action by virtue of a Class presents fewer management problems, conserves the resources of the parties and the courts and protects the rights of all Class Members.

44.     Notice of pendency of this action and any resolution of this action can be provided by individual notice based upon the records of Pilgrim's and/or by publication in specialty/trade papers.

### Common Injury to Class Members

45.     All members of the Class, including Plaintiffs, have suffered actual injuries as a result of Pilgrim's deceptive, unlawful, unfair, capricious, arbitrary and discriminatory conduct. The conduct complained of by Plaintiffs and Class Members is the decision by Pilgrim's to charge Plaintiffs and members of the Class with condemnation costs for poultry that was condemned by the USDA. Plaintiffs also seek on behalf of themselves and the Class final injunctive and declaratory relief that the following acts and/or omissions that have been utilized by Pilgrim's in the past violate the Packers & Stockyards Acts: (1) providing Class

Members with different quality baby chicks, while requiring that they compete for pay against each other despite the difference in baby chick quality; (2) refusing to allow Class Members to install scales; (3) refusing to provide Class Members with the delivered baby chicks genetic information; (4) refusing to provide Class Members with any sort of labeling on their feed that discloses ingredients and nutritional quantities; (5) allocating medical costs to the Class Members for inferior quality baby chicks that Class Members have no control over; (6) shifting environmental obligations on the Class Members; (7) paying the Class Members based on a ranking system because Pilgrim's has unilateral control over the major inputs that affects the Class Members' rankings and (8) not allowing growers the ability to engage in sound management decisions. The above acts and/or omissions violate the Packers & Stockyards Act and are breaches of Defendant's fiduciary obligations.

## SUBCLASS A

46.    Plaintiffs also bring this nationwide class action on behalf of themselves and others similarly situated. Plaintiffs propose the above class that includes all growers for Pilgrim's within the past four years. The Plaintiffs also bring this class action on behalf of the following proposed Subclass (Subclass A): All broiler growers who have grown broilers for Pilgrim's in the past four years under the ranking system method of pay and do not utilize tunnel ventilation in their broiler houses and who have received less pay per pound for grown broilers than those growers with tunnel ventilated broiler houses. Excluded from this class is Defendant; any entity or person who has a controlling interest of

14

Defendant; all officers, directors and employees of Defendant; any legal representatives, heirs, successors and assignees of the foregoing; and any person or entity that has any monetary interest in any of Defendant's company-owned broiler farms. In the alternative, if a nationwide subclass is not allowed, Plaintiffs seek five separate subclasses for each state as defined in paragraph 40(a). Plaintiffs reserve the right to expand the class definition as may be appropriate based upon evidence uncovered during the course of discovery.

### Rule 23(a) Prerequisites of Subclass A

47.     Prosecution of the claims of Subclass A as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)     There are currently approximately 300-350 broiler growers in each complex. Upon information and belief, there are complexes in Lufkin, TX, Dallas, TX, Mt. Pleasant, TX (2 plants), Nacogdoches, TX, DeQueen, AR, Broadway, VA, Marshfield, NC and Moorefield, WV. It is unknown how many growers in each complex have no tunnel ventilation. However, it is believed that far less than 50% is tunnel ventilated. Because of the high number of growers in the proposed Subclass A, joinder of all members is impracticable. Joinder is also impracticable because of the geographic diversity of the members, the need to expedite judicial relief and the Plaintiffs' lack of knowledge of the identities or locations of all members of this Subclass.

(b)     There are numerous questions of law and fact arising from Pilgrim's conduct which are not only common to, but are identical to members of

15

Subclass A. This includes the only question of law that is necessary for prosecution of Plaintiffs' and Subclass A claims, and that is whether or not the discriminatory pay offered by Pilgrim's to its growers based on the ventilation of their broiler houses violates the Packers & Stockyards Act and breaches its fiduciary duties.

(c)     The claims of Plaintiffs are typical of the claims of the members of Subclass A as all claims arise out of the discriminatory pay described above. The Plaintiffs and the members of Subclass A have been, and continue to be unfairly and identically harmed by the same unfair, deceptive, capricious and discriminatory conduct.

(d)     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of Subclass A. There are no conflicts between the claims of the Plaintiffs and members of Subclass A. Counsel for Plaintiffs will vigorously assert Plaintiffs' claims and those of the members of Subclass A.

### Rule 23(b)(3) Prerequisites of Subclass A

48.     In addition, the prosecution of the claims of Subclass A as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)     The questions of law and fact common to the members of Plaintiffs and Subclass A predominate over any questions affecting only its individual members; and

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy.

16

49.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members which could impede or impair others right to protect their interests. By contrast, prosecution of this action by virtue of a subclass presents fewer management problems, conserves the resources of the parties and the courts and protects the rights of all class members.

50.    Notice of pendency of this action and any resolution of this action can be provided by individual notice based upon the records of Pilgrim's and/or by publication in specialty/trade papers.

### Common Injury to Members of Subclass A

51.    All members of Subclass A, including Plaintiffs, have suffered actual injury as a result of Pilgrim's deceptive, unlawful, unfair, capricious, arbitrary and discriminatory conduct. The conduct complained of by Plaintiffs and Subclass A is the inequity of pay to the growers, based on nothing more than the ventilation system present in each respective grower's broiler houses.

### VI. CAUSES OF ACTION

### Class Count I - Violation of Packers & Stockyards Act

52.    Plaintiffs incorporate by reference paragraphs 1-45.

53.    The past practice of charging the growers for condemnation costs is deceptive, unlawful, unfair, capricious, arbitrary and discriminatory, and is a violation of the Packers & Stockyards Act. Pilgrim's has violated 7 U.S.C. § 192 (a) and (b) (1999) by charging Plaintiffs and Class Members for condemned

weight of poultry after Pilgrim's had caught the broilers from Plaintiffs' and Class Members' farms.

54.     By reason of such violations, Plaintiffs and Class Members have been damaged. Plaintiffs seek to recover these damages on behalf of themselves and Class Members under 7 U.S.C. § 209 (a) and (b) (1999).

55.     Plaintiffs seek money damages from Pilgrim's on behalf of themselves and Class Members for these violations.

### Class Count II - Violation of Packers & Stockyards Act

56.     Plaintiffs incorporate by reference paragraphs 1-45.

57.     Inputs that determine grower pay are in the unfettered control of Pilgrim's. Growers with sub-standard inputs are competing against growers with better quality inputs. These inputs are the driving forces behind Pilgrim's ranking system which determine Plaintiffs' and Class Members' pay. Lack of control over inputs in Pilgrim's ranking system and growers inability to engage in sound management practices is deceptive, unlawful, unfair, capricious, arbitrary and discriminatory, and singularly or taken together, violate 7 U.S.C. § 192 (a) and (b) (1999).

58.     By reason of such violations, Plaintiffs and Class Members have been damaged. Plaintiffs seek final injunctive and declaratory relief on behalf of themselves and Class Members under 7 U.S.C. § 209 (a) and (b) (1999).

59.     Plaintiffs seek declaratory relief from Pilgrim's on behalf of themselves and Class Members, declaring that the following violate the Packers & Stockyards Act, 7 U.S.C. § 192 (a) and (b): (1) providing Class Members with

different quality baby chicks, while requiring that they compete for pay against each other despite the difference in baby chick quality; (2) refusing to allow Class Members to install scales; (3) refusing to provide Class Members with the delivered baby chicks genetic information; (4) refusing to provide Class Members with any sort of labeling on their feed that discloses ingredients and nutritional quantities; (5) allocating medical costs to the Class Members for inferior quality baby chicks that Class Members have no control over; (6) shifting environmental obligations on the Class Members; (7) paying the Class Members based on a ranking system because Pilgrim's has unilateral control over the major inputs that affects the Class Members' rankings and (8) not allowing growers the ability to engage in sound management decisions. Plaintiffs seek on behalf of themselves and Class Members a permanent injunction enjoining Pilgrim's from employing the aforementioned acts and practices.

### Class Count III – Breach of Fiduciary Duties

60.     Plaintiffs incorporate by reference paragraphs 1-45 and 53-59.

61.     The decisions regarding the treatment of Plaintiffs and Class Members, pay to Plaintiffs and Class Members and control over the Plaintiffs and Class Members were made in Pittsburg, TX. These decisions to mistreat the Plaintiffs and Class Members as complained of herein were hatched and placed into motion at Pilgrim's corporate headquarters in Pittsburg, TX.

62.     The transactions complained of herein were neither fair or equitable to Plaintiffs and Class Members. Pilgrim's failed to make reasonable use of the confidence that growers placed in it, failed to act in utmost good faith and

19

honesty. Pilgrim's used its power to gain benefit for itself at the expense of Plaintiffs and Class Members and its self-interest is a conflict with its obligations to Plaintiffs and Class Members.

63.    Pilgrim's breached its fiduciary duties to Plaintiffs and Class members and, as a result, Plaintiffs and Class Members are entitled to profit disgorgement.

64.    As a proximate and/or producing cause of Pilgrim's breach to Plaintiffs and Class Members, Pilgrim's is liable for monies for improper condemnation charges.

### Subclass A Count IV - Violation of Packers & Stockyards Act

65.    Plaintiffs incorporate by reference paragraphs 1-38, and 46-51.

66.    Pilgrim's policy of discriminating between growers depending on the ventilation system is deceptive, unlawful, unfair, capricious, arbitrary and discriminatory and said conduct violates 7 U.S.C. § 192(a) and (b) (1999) under the Packers & Stockyards Act.

67.    By reason of such violations, Plaintiffs and members of Subclass A have been damaged. Plaintiffs seek to recover these damages on behalf of themselves and members of Subclass A under 7 U.S.C. § 209 (a) and (b) (1999).

68.    Plaintiffs seek money damages from Pilgrim's on behalf of themselves and members of Subclass A for these violations.

### Subclass A Count V - Breach of Fiduciary Duties

69.    Plaintiffs incorporate by reference paragraphs 1-38, and 46-51.

70.     Pilgrim's policy of discriminating between growers depending on the ventilation system in each grower's houses is deceptive, unlawful, unfair, capricious, arbitrary and discriminatory and said conduct is a breach of Pilgrim's fiduciary duties owed to Plaintiffs and members of Subclass A.

71.     By reason of such violation, Plaintiffs and members of Subclass A have been damaged. Plaintiffs seek to recover these damages on behalf of themselves and members of Subclass A.

72.     Plaintiffs seek money damages from Pilgrim's on behalf of themselves and members of Subclass A for these violations.

### VI. PLAINTIFFS' INDIVIDUAL CLAIMS

73.     Plaintiffs incorporate the foregoing paragraphs.

74.     Pilgrim's attempted to force new contracts upon Plaintiffs even though there were valid contracts in existence. Plaintiffs refused as an existing contract was still in place and valid.

75.     As a result, Pilgrim's took away a raise that was previously given to Plaintiffs. Pilgrim's also caused Plaintiffs to incur longer layouts because they refused to sign the contracts.

76.     Plaintiff, Don Davis, has been wrongfully terminated by Pilgrim's, and has not grown any chickens in the past six months.

77.     When Pilgrim's and Plaintiffs initially began their respective contractual relationships, Pilgrim's defrauded Plaintiffs by making material misrepresentations, which Pilgrim's knew to be false at the time of making them. Plaintiffs have pled such misrepresentations throughout this Complaint. Plaintiffs

relied on these statements to their detriment, which has caused Plaintiffs damages described herein. Plaintiffs would not have entered into a contractual relationship with Pilgrim's, had Pilgrim's not materially misrepresented to them said facts regarding the relationship of the two.

78.     The above conduct was a breach of the contracts, violation of the Packers and Stockyards act, fraud, negligence and a violation of Pilgrim's fiduciary obligations. These violations and breaches were a proximate and/or a producing cause and direct result of damages suffered by Plaintiffs.

79.     As a result, Plaintiffs have been irreparably harmed, and seek lost profits, lost income, disgorgment of profits and attorney fees.

80.     Pilgrim's conduct was sufficient to justify the implementation of exemplary damages in the amount the jury determines to be fair and just.

### VII. JURY

81.     Plaintiffs request that a jury be convened to decide all questions of fact.

### VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the classes pleaded herein be certified as requested and the parties obtain relief as requested herein, including permanent injunctive relief,  pre-judgment and post-judgment interest as allowed by law, attorneys' fees, costs and all other relief Plaintiffs are entitled to whether in law or equity.

Respectfully submitted,

**PATTON & TIDWELL, L.L.P.**
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398
(903) 792-7080 (Phone)
(903) 792-8233 (Fax)

By: _____
Kurt Truelove
Texas Bar No. 24013653

Kelly Tidwell
Texas Bar No. 20020580

Attorneys in Charge

**CHANDLER LAW OFFICES**
207 E. Frank, Suite 105
P.O. Box 340
Lufkin, Texas 75902-0340
(936) 632-7778 (Phone)
(936) 632-1304 (Fax)

George Chandler
Texas Bar No. 04094000

Kirk Mathis
Texas Bar No. 24006078

Dean Jackson
Texas Bar No. 24008373

ATTORNEYS FOR PLAINTIFFS

23